IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREA ARCHIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 C 7857 |
| | ) | |
| THOMAS J. DART, as Sheriff of Cook County, | ) | Judge Sharon Johnson Coleman |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Andrea Archie, filed a complaint against her employer, the Sheriff of Cook County alleging that her employer interfered with her Family Medical Leave Act ("FMLA") benefits, retaliated against her for her use of FMLA benefit time, and discriminated against her based on her disability in violation of the Americans with Disabilities Act ("ADA"). Defendant Sheriff filed for summary judgment on all counts. For the reasons stated below, this Court denies the Sheriff's motion.

As a preliminary matter, this Court denies plaintiff's motion to strike the affidavit of Rosemary Nolan. In so ruling, however, this Court does not dispense with its evaluation of the affidavit, as with all the other evidence presented in relation to the summary judgment now before this Court, and thus this Court disregards those portions of the affidavit that are conclusions rather than statements of fact.

**Background**

Andrea Archie began working for the Cook County Sheriff's Department as a deputy sheriff in the Cook County Department of Corrections in 1996. She has continued in that

capacity to date. As a correctional officer, Archie is responsible for maintaining the safety and well-being of pretrial detainees. For the first nine years as a deputy, Archie worked from 3:00 p.m. to 11 p.m., but in 2005 was transferred to the day shift (7 a.m. to 3 p.m.) at her request.

Archie sought a promotion from deputy to sergeant on two occasions. In order to be eligible for promotion to sergeant a deputy sheriff must take a test administered by the Merit Board.[1] If the officer passes the test, he or she is "certified" as eligible for promotion. If the CCDOC has a promotional opportunity, certified officers will be considered for promotion based on their disciplinary history, criminal history, driving record, weapons qualifications (if applicable), attendance history, in-service training final exam scores, writing samples, work sample score (if applicable) and interview score.

Archie was certified as eligible for promotion when she took and passed the Merit Board test in 2003 and 2005. She was interviewed, but not promoted, in both 2003 and 2005. The Merit Board test was not offered in 2006. Archie did not take the Merit Board test in 2007 when it was next offered or anytime since 2005. The 2007 certified list was effective on December 19, 2007. Archie did not take the test again because she thought she would not be promoted unless she was politically connected and any attempt would be futile. Archie also believed that that there were "unspoken rules" for promotion including that an officer should not have used FMLA time, sick leave, and must work in the Superintendant's Office. Archie identified some individuals (Yolanda Darring, Thomas Conley, Norlander Young, Lonnie Hollis, and Wilfredo Cintron) promoted to sergeant since 2006, though she does not know from which list those individuals were promoted. Archie believes she was more qualified than those individuals.

---

[1] Promotion procedure for county sheriff's deputies is governed by statute. *See* 55 ILCS 5/3-7009.

Archie suffers from disabling depression and anxiety. She also suffers from diabetes, though it is not disabling. Each year, beginning in 2005, Archie has applied for and received FMLA leave. Archie has always taken her FMLA leave on an intermittent basis. Each year, Archie has been approved for five days a month of intermittent FMLA. There is no regular schedule on which Archie uses her leave. The days of the week that Archie uses her FMLA leave vary from week to week. More often than not, Archie does not give advance notice of her intent to use her FMLA day. She has made it a common practice to describe a day off as FMLA on the morning she takes an absence. Archie has never called in requesting to take a day off as an FMLA day and been told by a supervisory official that she could not take the day off. Supervisory officials have never told her that she could not use FMLA leave for a future day. On approximately ten occasions over the last five years, Archie has not been permitted to leave in the middle of her shift and claim it as FMLA time. Often, but not always, she was told that there was no one to cover for her.

CCDOC's General Orders directs that each Superintendant or Unit head will review all employees' attendance record each month. An employee would be considered to be abusing medical time if that employee was using medical time when not sick. Specifically, abuse may be suspected if an employee regularly or routinely uses sick time (1) in conjunction with scheduled days off, (2) in conjunction with holidays, (3) immediately before, after or on paydays, (4) once it is earned, or (5) in other patterns which leads the Superintendent or Unit Head to suspect abuse. If an employee is suspected of abusing sick time, the employee may receive counseling. Archie testified that counseling means warning. When FMLA leave is not foreseeable, an employee must call in one hour before their shift begins or as soon as practicable.

A March 7, 2007, memorandum from Superintendent Villanueva directed to all shift commanders contained a list of "FMLA/Medical Suspected Abusers." Archie was listed as a suspected FMLA and medical leave abuser. At some point in 2007, Archie obtained a copy of the memorandum. Around March 14, 2007, Archie was called to Lieutenant Moore's office and told that she was suspected of abusing her leave time. A union representative was present at the meeting at Archie's request. Archie was given two "counseling" forms, which she believed constituted harassment because she received two forms. Archie received a Disciplinary Action Form for calling in at 6:33 a.m. on May 23, 2007, to invoke FMLA leave that day. Archie was placed into "proof" status over Labor Day weekend in 2007.

Archie filed two grievances in response to the two counselings she received. Both grievances were resolved in her favor and the counselings were removed from her file. Archie filed twenty grievances or more since 2007. Archie believes the disciplinary action forms she was given over the years since 2007 were in retaliation for her exercising her rights under the FMLA. Archie asserts that, besides being disciplined, there were other times she was harassed without being disciplined. In June 2007 when Sergeant Lyles referenced Archie's FMLA leave and that Archie would have to come to work now that her leave has run out or words to that effect. In December 2007 Captain McGuire yelled at Archie in his office without a union representative present in violation of her Weingarten rights. Archie believes the number of write-ups she received increased in 2007. She received sixteen write-ups in 2007 and 2008. The increase coincided with identification as a suspected FMLA abuser in the Memorandum of March 7, 2007.

Archie believes that she was harassed as a result of taking FMLA, but admits that no one had mentioned her disability when harassing her. Archie also believes that the denial of a

promotion was due to a lack of political connections, use of FMLA leave time, and because she did not work in the Superintendent's office. No one ever indicated to Archie that she was not being promoted due to her disability. Archie testified that she had been warned against using the accommodation for her disability. The only accommodation Archie receives is FMLA leave. On January 7, 2008, Archie filed a charge with the Illinois Department of Human Rights alleging discrimination and retaliation in violation of the ADA.

**Legal Standard**

A party is entitled to summary judgment if all of "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. When considering a summary judgment motion, the Court construes the facts and all reasonable inferences in the light most favorable to the non-moving party. *Abdullahi v. City of Madison*, 423 F. 3d 763, 773 (7th Cir. 2005). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 547 (7th Cir. 2011).

**Discussion**

1. *FMLA Claims for Interference and Retaliation*

Archie claims that the Sheriff interfered with her FMLA rights by denying her FMLA leave time and retaliated against her for exercising her FMLA rights by singling her out for discipline. The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act]" or to "discharge or

in any other manner discriminate against any individual for opposing any practice made unlawful" by the Act. 29 U.S.C. §2615(a).

In order to prevail on a claim of FMLA interference, a plaintiff must establish that: (1) she was eligible for FMLA protection; (2) her employer was covered by the FMLA; (3) she was entitled to FMLA leave; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her benefits to which she was entitled. *Brown v. Auto. Components Holdings, LLC,* 622 F.3d 685, 689 (7th Cir. 2010). The Sheriff does not dispute that Archie has established the first four elements, for purposes of summary judgment, but argues that Archie cannot show that the Sheriff denied her benefits to which she was entitled.

Whatever his reasoning, the Sheriff does not dispute the first four elements, including that Archie provided sufficient notice of her intent to take leave. Instead, the Sheriff argues that the denial of leave on the approximately ten occasions in the last five years were not unreasonable. The crux of the Sheriff's argument is that it did not interfere with Archie's FMLA rights because Archie was never told that she could never take leave mid-shift. The Sheriff asserts that there was no one to replace her in the middle of her shift and that she failed to call in early enough to notify her supervisor that she was taking an FMLA leave day. "Nothing in the FMLA or the implementing regulations prevents an employer from enforcing a rule requiring employees on FMLA leave to keep the employer informed about the employee's plans." *Gilliam v. United Parcel Serv., Inc.*, 233 F.3d 969, 972 (7th Cir. 2000). However, Archie has put forth evidence of several instances when she was denied leave or where approval was delayed until after she received discipline. Archie has also presented evidence that the Sheriff's notification policy was one hour or "as soon as practicable," and the Sheriff does not dispute that she

provided sufficient notice of her intent to take leave. While the Sheriff's explanation may ultimately turn out to be valid, at this juncture the Court cannot make credibility determinations on competing evidence. This Court finds that when viewed in the light most favorable to Archie, she has presented sufficient evidence to raise a question of fact on the issue of interference.

In addition to providing substantive rights, the FMLA prohibits employers from discriminating or retaliating against employees who exercise their FMLA rights. *See* 29 U.S.C. §§ 2615(a)(2), 2615(b); 29 C.F.R. § 825.220(c); *see also Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005). "For instance, if an employee takes FMLA leave, an employer cannot use it as a negative factor in hiring, promotions, or disciplinary actions." *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 978 (7th Cir. 2008) (citing 29 C.F.R. § 825.220(c)). Archie claims that the Sheriff retaliated against her for exercising her FMLA rights by refusing to promote her and harassing her. The Sheriff argues that Archie's retaliation claim lacks evidentiary support to show an adverse employment action support and to show that similarly situated employees that were treated differently.

A plaintiff may prove her retaliation claim under either the direct and indirect methods of proof. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662 (7th Cir. 2006). The direct method requires her to show that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. *Id*. at 663. The indirect method requires her to show that: (1) she engaged in statutorily protected activity; (2) she was performing her job to her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity.

Once a prima facie case is set forth, the burden-shifting pretext analysis takes place. *Serednyj*, 656 F.3d at 556-557.

Here, under either method of proof Archie has put forth sufficient evidence to create a question of fact on her retaliation claim. While the Sheriff argues that Archie did not suffer an adverse employment action, Archie presents evidence that she was disciplined, received numerous write-ups, may have lost promotional opportunities, and subjected to harassment or ridicule by her superiors. Although the Sheriff contends that counseling is not discipline, there is evidence in the record, including form the Sheriff's own personnel that the union and the Sheriff had differing views on whether counseling is discipline. Archie presented numerous disciplinary actions from 2007 and 2008, following the Villanueva memorandum that suggest that material facts exist as to whether Archie was subjected to an adverse employment action on the basis of her use of FMLA leave. The Villanueva memorandum itself creates an inference that Archie was subject to greater scrutiny because she was on the list as a suspected FMLA and medical leave abuser. "Materially adverse actions are not limited to employment-related activities but include any actions that would dissuade a reasonable employee from exercising his rights under the FMLA." *Breneisen*, 512 F.3d at 979. Whether the greater scrutiny and perceived increase in write-ups and disciplinary actions based on her taking leave were designed to dissuade Archie from exercising her FMLA rights is a question for the jury to decide.

Under the indirect method of proof, Archie must also show that similarly situated employees were treated differently. Archie has presented four comparators who were not on the list of suspected FMLA or medical leave abusers and have been promoted since 2006 either from the 2003 or the 2005 Merit Board certified list. The proposed comparators, Yolanda Darring,

Thomas Conley, Norlander Young, Lonnie Hollis, were all Cook County Sheriff's deputies that were promoted to sergeant. Although the Sheriff asserts that the proposed comparators were not less qualified as Archie claims, Archie testified that she had more seniority and was more qualified in other respects than the four comparators. "A plaintiff need not show complete identity with a proposed comparator, but she must show 'substantial similarity.'" *Serednyj*, 656 F.3d at 551. Thus, whether they were more or less qualified or were promoted because they did not exercised their FMLA leave rights and were not on the list of suspected leave abusers is a factual question.

The Sheriff further argues that it is entitled to judgment as a matter of law on the retaliation issue because Archie's claim for retaliation is time-barred. Pursuant to FMLA section 2617(c)(1) a plaintiff must file her claim for retaliation within two years of the date of the last event constituting the alleged violation. 29 U.S.C. §2617(c)(1). The statute of limitations extends to three years for willful violations. 29 U.S.C. §2617(c)(2). "The Seventh Circuit has yet to define 'willful' as applied to an FMLA claim (the FMLA itself does not define the term), but other courts have adopted the definition set forth by the Supreme Court in *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988), requiring a showing that the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FMLA].'" *Akins-Brakefield v. Philip Envtl. Servs. Corp.*, 2010 U.S. Dist. LEXIS 25067, *37-38 (S.D. Ill. Mar. 17, 2010) (citing *Poteet v. Potter*, No. IP00-0712-C-Y/S, 2005 U.S. Dist. LEXIS 8658, 2005 WL 1115805 at *23 (S.D. Ind. Mar. 28, 2005) (collecting cases)).

Here, the Sheriff contends that Archie's retaliation claim is untimely because she filed her complaint on December 18, 2009, but she was no longer eligible for promotion as of December 17, 2007, when the 2007 Merit Board certification list became effective. Thus, the Sheriff asserts that Archie would have had to file this action within two years of that date or December 17, 2009. However, Archie has put forth evidence that several deputy sheriffs who were not on the 2007 list have been promoted since 2006 and thus there is a factual question as to when those sheriffs were promoted and from which Merit Board list. Additionally, the Memorandum issued by Superintendent Villanueva raises a sufficiently strong inference that employees were singled out as suspected FMLA abusers coupled with the apparent increase in the amount of disciplinary actions in the months after Villanueva circulated the memorandum suggests that questions of fact remain on the issue of whether the alleged violation was willful.

2. *ADA Claims for Discrimination and Retaliation*

The ADA prohibits employers from discriminating against disabled employees because of their disability. 42 U.S.C. § 12112(a); *Dickerson v. Bd. of Trs.*, 657 F.3d 595, 600 (7th Cir. 2011). The ADA also prohibits employers from retaliating against employees on the basis of their disability. 42 U.S.C. § 12203(a); *Id.* at 601. The same analysis using either the direct or indirect method of proof as described above under the FMLA is used for claims of discrimination and retaliation under the ADA. *See Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1117 (7th Cir. 2001).

The Sheriff admits that Archie suffers from a disability, namely depression and anxiety. The parties dispute whether Archie engaged in a protected activity. Archie claims she engaged in a protected activity in 2007 when she complained to two supervisors that she was receiving

discriminatory treatment. Archie testified that she complained about discrimination and retaliation through the grievances she filed. Archie drafted a memorandum on October 2, 2007, that alluded to discrimination and referenced the FMLA, the Civil Rights Act, and the Illinois Human Rights Act. The Sheriff argues that the memorandum only vaguely referred to discrimination and did not state any particular type of discrimination. The Sheriff further contends that Archie admits that no one specifically referred to her disability either in failing to promote her or at any other time. However, Archie asserts that the only accommodation she received for her disability was FMLA leave and therefore the same factual issues that relate to her FMLA claims apply with equal force to her ADA claims. This Court finds that since the analysis is the same for both claims, the factual issues relating to whether she suffered an adverse employment action and was treated differently than similarly situated employees who did not engage in a protective activity.

**Conclusion**

Based on the foregoing, when this Court views all the material in the record in the light most favorable to Archie and draws all reasonable inferences in Archie's favor, the record is replete with factual issues that require resolution by a jury. Accordingly, the Sheriff's motion for summary judgment is denied.

IT IS SO ORDERED.

Date: June 1, 2012

Entered:_____
Sharon Johnson Coleman