IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ANDREA ARCHIE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 09 C 7857 |
| THOMAS J. DART, as Sheriff of Cook County, | ) | Judge Sharon Johnson Coleman |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Andrea Archie, filed a complaint against defendant Thomas Dart, Sheriff of Cook County ("Sheriff"), alleging that the Sheriff violated the Family Medical Leave Act, 29 USC § 2601, ("FMLA") and the Americans with Disabilities Act, 42 USC § 12111, 12203, ("ADA"). The case proceeded to a jury trial on December 3, 2012. The jury returned a verdict in favor of the Sheriff. Archie now moves for a new trial pursuant to Federal Rule of Civil Procedure 59(a)(1)(A), asserting that the verdict was against the manifest weight of the evidence. For the reasons set forth below, this Court denies the motion.

**Background**

Andrea Archie began working for the Cook County Sheriff's Department as a deputy sheriff in the Cook County Department of Corrections in 1996. She has continued in that capacity to date. As a correctional officer, Archie is responsible for maintaining the safety and well-being of pretrial detainees. For the first nine years as a deputy, Archie worked from 3:00 p.m. to 11 p.m., but in 2005 was transferred to the day shift (7 a.m. to 3 p.m.) at her request. The Sheriff does not contest that Archie suffered from a serious health condition, i.e. depression, or

that she was entitled to intermittent FMLA leave due to depression. The primary contested issues at trial and in the motion now before the Court are whether Archie provided the Sheriff with as much notice as she reasonably could and whether the Sheriff interfered with Archie's FMLA rights.

**Legal Standard**

"In passing on a motion for a new trial, the district court has the power to get a general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial. If, after evaluating the evidence, the district court is of the opinion that the verdict is against the manifest weight of the evidence, a new trial is appropriate." *Mejia v. Cook County*, 650 F.3d 631, 633 (7th Cir. 2011) (internal citations omitted). However, the district court's discretion to grant a new trial is not unlimited and the court should give a certain measure of deference to the jury's conclusions. *Moore ex rel. Estate of Grady v. Tuelja*, 546 F.3d 423, 427 (7th Cir. 2008). "This deference is encompassed within the manifest weight standard, which balances 'a decent respect for the collective wisdom of the jury' against a duty not to 'approve miscarriages of justice.'" 11 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure § 2806*, at 74 (2d ed. 1995).

**Discussion**

Archie moves for a new trial, arguing that the jury's verdict in favor of the Sheriff was against the manifest weight of the evidence because she presented evidence proving each of the elements necessary to prevail on her interference claim. Specifically, Archie was required to prove: (1) that she had a serious health condition that made her unable to perform the functions of her job; (2) that she provided the Sheriff with as much notice as she reasonably could; and (3) that the Sheriff interfered with Archie's exercise of or attempt to exercise her rights under the

FMLA by delaying approval of her leave, subjecting her to unjustified discipline and subjecting her to harassment in the workplace. The first element is uncontested. The Sheriff did not dispute that Archie was eligible for intermittent FMLA leave. Therefore, this Court will only address whether the jury's verdict was against the manifest weight of the evidence on the second and third elements.

*1. Whether Archie provided adequate notice of her intent to take FMLA leave*

The parties stipulated at trial that, "in the case of FMLA leave that is not foreseeable employees should give notice of the need as soon as practicable." (Trial Tr. 12/4/12 at 160). Archie testified that if her depression flared up she could not safely discharge her duties as a Cook County Correctional Officer at the jail. She further testified that if she felt she could not work on a particular day due to her depression, she would call the designated number and let them know her identification number, name, working location, shift time and whether she was using straight medical leave or FMLA leave. Archie also testified that she only used FMLA leave when her depression flared up and that she always gave "notice of the need as soon as practicable." (Trial Tr. 12/4/12 at 161:1-3; 12/5/12 at 381:2-22). Archie asserts that this testimony is uncontroverted and thus this Court should find that Archie gave notice of her need to take FMLA leave as soon as practicable. This Court disagrees.

"Where an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied." 29 C.F.R. §825.302(d). Here, the parties did not dispute that Archie was required to give notice one-hour before her shift began or as soon as practicable according to the Sheriff's policy. "As soon as practicable means as soon as both possible and practical, taking into account all of the facts and circumstances of the individual case." 29 C.F.R.

3

§825.302(b).

Archie essentially argues that because she testified that she gave notice as soon as practicable, the jury was required to find in her favor. Archie however does not provide any authority to support the proposition that her subjective statement that she gave notice as soon as practicable is sufficient for a verdict in her favor. There was additional testimony, both from Archie and other Cook County Jail officials, that understaffing of correctional officers compromises jail safety and security. Indeed, evidence at trial showed that Archie would call in to request leave up to 60 times a year on the morning she was scheduled to work. On several occasions Archie would call less than an hour before her 7:00 a.m. shift. On other occasions, such as May 9, 2007, Archie did not call in until after her shift began. Archie's testimony provided no further explanation as to why it was not practicable for her to call in at least one hour before her shift. In fact, she testified that on several occasions she did not call in more than hour before her shift because she was still asleep. (Trial Tr. 12/5/12, Vol. III, at 317-23). Although this Court recognizes, and there was testimony at trial, that Archie's depression could cause sleep disruptions, there is no evidence in the record that Archie was unable to rouse herself long enough to call the Sheriff at least one hour before her shift to ensure the Sheriff could call a replacement.

The Sheriff relies on *Valdivia v. BNSF Ry Co.,* 2009 U.S. Dist. LEXIS 10828 (D. Kan. Feb. 12, 2009), in which the district court faced a similar factual situation and entered a verdict for the defendant after a bench trial. While this Court notes that *Valdivia* is not binding authority, it is illustrative. The plaintiff, Valdivia, suffered from disabling migraines. The court found that the plaintiff could not foresee when he would suffer a migraine headache and that not all of his migraines caused the plaintiff to miss work and not all of his prescription drug therapy caused

4

him to sleep through all or part of his shift. Thus, the court concluded that the plaintiff was required to give notice as soon as practicable. In discussing whether the plaintiff had given sufficient notice the court examined the plaintiff's contention that because of his medicine, he did not wake up to call before the start of his shift. The court reasoned that the plaintiff did not call in as soon as practicable because he knew on the particular occasion at issue that he was suffering from a migraine and that taking Maxalt could cause him to sleep deeply for 24 to 27 hours, and yet, he took a second dose of the medication at 2:00 p.m. only 10 hours before his shift. The court noted that when the plaintiff took the second dose he was on notice that he would need FMLA leave and that he should have called into work. Therefore, the court held that such a call was clearly possible and practicable, taking into account all of the facts and circumstances of the case. *Valdivia v. BNSF Ry. Co.*, 2009 U.S. Dist. LEXIS 10828, *19-20 (D. Kan. Feb. 12, 2009).

Similarly, this Court is not inclined to find that Archie woke up after her shift began and, realizing that her depression had flared up, called in her FMLA leave. Would it not be both practicable and possible for her to call in when she became aware that her depression had flared up either the night before or sometime during the night? "Surely Congress did not intend that employees could take FMLA leave willy-nilly, regardless as to whether they were able to give notice before their workday began…" *Id.* at 21 n.8. As Archie herself testified, staffing at the Cook County Jail is crucial for the safety of both inmates and guards. In order to make appropriate staffing arrangements, the Sheriff needed reasonable notice of her intent to take FMLA leave on any given day. This Court finds that the conclusion that Archie had not provided reasonable notice of her intent to take FMLA leave is not against the manifest weight of the evidence.

*2. Whether the Sheriff interfered with Archie's FMLA leave*

Archie argues that the manifest weight of the evidence shows that the Sheriff intererefed with her FMLA leave by delaying approval of her leave, subjecting her to unjustified discipline and subjecting her to harassment in the workplace. Archie asserts that she was disciplined for "absence – no call" or "absent – late call" on three occasions where grievances were filed and ultimately decided in Archie's favor: May 9, 2007 (two disciplinary action forms with two separate grievances), May 23, 2007 (a disciplinary action form and grievance), and July 4, 2007 (a disciplinary action form and grievance). Archie was also counseled on several occasions for FMLA use. At trial, the Sheriff maintained that "counseling" is not discipline. Both Archie and the union representative considered counseling to be discipline.

To prevail on her FMLA-interference claim, Archie needed to prove that: "(1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled." *Pagel v. Tin Inc.*, 695 F.3d 622, 627 (7th Cir. 2012). The jury's verdict that the Sheriff did not deny Archie FMLA benefits to which she was entitled is not against the manifest weight of the evidence.

The disciplinary action forms on two of the three dates cited by Archie do not indicate that Archie sought FMLA leave. Instead, the forms show that Archie called in late and requested "medical" leave. Archie's own testimony noted the distinction between straight medical leave requests and FMLA requests. On the third date, July 4, 2007, Archie did not arrive for her 7:00 a.m. shift until 7:45 a.m. Archie has not presented any evidence from which a trier of fact could conclude that her tardiness on July 4, 2007, was FMLA related. Archie's own testimony at trial reflected that she received intermittent FMLA leave every year since 2006, taking leave up to

five days a month. Indeed, there is no evidence that Archie was ever denied FMLA leave or was in any manner discouraged from taking FMLA leave.1  Accordingly, this Court finds that the verdict was not against the manifest weight of the evidence.

**Conclusion**

Based on the analysis herein, plaintiff Andrea Archie's Motion for a New Trial is denied.

IT IS SO ORDERED.

Date: March 27, 2013

Entered: _____
Sharon Johnson Coleman

---

1 The Sheriff argues in opposition to the motion for a new trial that Archie did not suffer any adverse employment action. While that may be true, the question of whether the plaintiff suffered an adverse employment action is relevant to a retaliation claim under the FMLA. *See Pagel v. Tin Inc*., 695 F.3d 622, 631 (7th Cir. 2012). Here, Archie claim interference with FMLA rather than retaliation.